# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued November 17, 2011       Decided May 15, 2012

No. 11-5049

TIMBISHA SHOSHONE TRIBE, ET AL.,
APPELLANTS

v.

KENNETH LEE SALAZAR, SECRETARY OF THE INTERIOR, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cv-00968)

*Robert T. Coulter* argued the cause for appellants. With him on the briefs were *Philomena Kebec* and *David M. Kairys*.

*Brian C. Toth*, U.S. Department of Justice, argued the cause for appellees. With him on the briefs were *Maureen E. Rudolph* and *Aaron P. Avila*. *R. Craig Lawrence*, Assistant U.S. Attorney, entered an appearance.

Before: SENTELLE, *Chief Judge*, GRIFFITH and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* GRIFFITH.

GRIFFITH, *Circuit Judge*: Individuals claiming to be the Tribal Council of the Timbisha Shoshone appeal the district court's dismissal of their case for failure to state a claim, but we do not reach that issue because we conclude the plaintiffs lack standing. We vacate the judgment of the district court and remand with instructions to dismiss their complaint for lack of jurisdiction.

I

In 1951, certain members of the Shoshone tribes sued the United States over the loss of their lands. *See United States v. Dann*, 470 U.S. 39, 41 (1985). In proceedings stretching over twenty-six years, the Indian Claims Commission, a now-defunct independent agency created in 1946 to assess claims brought by Indians against the United States, awarded the Western Shoshone approximately $26 million in compensation, concluding that its members had been "deprived of their lands" by the "gradual encroachment by whites, settlers and others" and the "acquisition, disposition or taking of their lands by the United States." *Shoshone Tribe v. United States*, 11 Ind. Cl. Comm. 387, 416 (1962); *see also W. Shoshone Identifiable Grp. v. United States*, 40 Ind. Cl. Comm. 318 (1977). Pending distribution, the funds were placed in an interest-bearing trust account in the United States Treasury. *Dann*, 470 U.S. at 42. The Western Shoshone did not seek the funds, but instead demanded partial return of the lands. *Timbisha Shoshone Tribe v. Salazar*, 766 F. Supp. 2d 175, 179 (D.D.C. 2011). The United States rejected this demand, and the money remained in trust for two more decades, awaiting congressional legislation creating a disbursement scheme. *See* 25 U.S.C. § 1402(d) ("In cases where the Secretary has to submit a plan dividing judgment funds between two or more beneficiary entities, he shall obtain the consent of the tribal governments involved to the

proposed division. If the Secretary cannot obtain such consent . . . he shall submit proposed legislation to the Congress.").

In 2004, Congress passed the Western Shoshone Claims Distribution Act (Distribution Act), directing the Secretary of the Interior to distribute the funds on a per capita basis to all living U.S. citizens who were at least "1/4 degree of Western Shoshone blood" and who were not receiving other Indian Claims Commission awards. Pub. L. No. 108-270, § 3, 118 Stat. 805, 806. Individuals claiming to be the Tribal Council of the Timbisha Shoshone, a tribe of the Western Shoshone, sued, arguing that the Distribution Act was an unconstitutional taking of tribal property. The district court granted the Government's motion to dismiss, holding that the Distribution Act was constitutional. *Timbisha Shoshone Tribe*, 766 F. Supp. 2d 175. The plaintiffs now appeal that decision.

II

Before we assess the plaintiffs' constitutional claims, we must first determine whether they have standing to sue on behalf of the Tribe. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review . . . .'" (quoting *Mitchell v. Maurer*, 293 U.S. 237, 244 (1934))); *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663 (D.C. Cir. 1996) (en banc) (stating that standing is a necessary "predicate to any exercise of our jurisdiction"). The Plaintiffs concede they lack standing to bring suit as individuals, but allege they are the Tribal Council acting in its official capacity to protect the interests of the Tribe. *See Timbisha Shoshone Tribe*, 766 F. Supp. 2d at 182 n.3 ("All of the individual Plaintiffs sue only on behalf of the Tribe, not

on their own behalf as individual members of the Tribe." (quoting Pls.' Reply in Supp. of Mot. for Prelim. Inj. 7) (internal quotation marks and brackets omitted)). But whether they are has been called into question by circumstances arising after their appeal was taken.

The Government recognized the Timbisha Shoshone Tribe in 1983. For years, however, the Tribe has been embroiled in an internal leadership dispute, with two factions claiming to be the Tribal Council. One faction, plaintiffs here, is led by Joe Kennedy, the other by George Gholson. At the time the Kennedy faction filed this suit, the Government did not recognize a Tribal Council. The Kennedy faction claimed it was the Tribal Council authorized to bring suit on behalf of the Tribe. The Gholson faction countered with an amicus brief in the district court opposing the suit and arguing the Kennedy faction could not sue on the Tribe's behalf. According to the Gholson faction, "currently the Tribe has two elected Councils, neither of which is recognized by the [United States Government]," and therefore "there is no Tribal government for outside purposes." Br. Amicus Curiae of George Gholson in Supp. of Def.'s Mot. to Dismiss 1, *Timbisha Shoshone Tribe*, 766 F. Supp. 2d 175 (No. 1:10-cv-00968-GK), ECF No. 16. The Government adopted the Gholson argument. *Timbisha Shoshone Tribe*, 766 F. Supp. 2d at 182-83 (citing Defs.' Opp'n to Pls.' Prelim. Inj. Mot. 9).

On March 1, 2011, the district court concluded that the failure of the Government to recognize any Tribal Council did not bar a group from suing on behalf of the Tribe. *Id.* at 183-84 (citing *Golden Hill Paugussett Tribe of Indians v. Weicker*, 39 F.3d 51, 58-61 (2d Cir. 1994)). The district court then took as true the factual allegations of the Kennedy faction "that they are members of the governing Tribal Council of the Timbisha Shoshone," but rejected their claims as a matter of

law, holding the Distribution Act constitutional. *Id.* at 184, 187, 189. The plaintiffs appealed to us on March 8, 2011.

Shortly after the district court's decision, circumstances changed. First, the Government recognized the Gholson faction for "a limited time and for the limited purpose of conducting government-to-government relations necessary for holding a special election" to determine who constituted the Tribal Council. Appellees' 28(j) Ltr. Attach. 1, at 2. An election was held on April 29, 2011, and the Tribe's Election Committee issued a preliminary vote count that day showing that the Gholson faction had soundly defeated the Kennedy faction. *Id.* At least one member of the Kennedy faction filed an appeal with the Tribe's Election Committee, which ruled against him and then certified the results. *Id*. The newly-elected Gholson faction then requested recognition as the Tribal Council from the Government. On July 29, 2011, Assistant Secretary for Indian Affairs Larry Echo Hawk, "exercising by delegation the Secretary's authority over the relations between Indian tribes and the United States," *id.* at 3, recognized the Gholson-led Tribal Council in a letter stating:

> The April 29 election . . . constituted the resolution of an internal tribal dispute in a valid tribal forum. The Timbisha Shoshone people embraced a tribal government by means of an election compliant with their Constitution. The Federal Government may not ignore or reject the results of a tribal election that clearly states the will of a sovereign Indian nation. Therefore, the Department should recognize the Timbisha Shoshone Tribal government consisting of the five people identified in the Election Committee's report as having received the most votes in the April 29 election. . . . [T]his letter

provides the Bureau with an expeditious recognition of the Tribe's leadership.

*Id.* The Kennedy faction challenged Echo Hawk's decision in an action filed and still pending in the Eastern District of California. *Timbisha Shoshone Tribe v. U.S. Dep't of Interior*, 2:11-cv-00995 (E.D. Cal. filed Apr. 13, 2011).

We were first made aware of these developments on November 9, 2011, when the Government filed a letter informing us of this pursuant to Rule 28(j). FED. R. APP. P. 28(j). We ordered supplemental briefing on whether the Kennedy faction still had standing to bring this suit on behalf of the Tribe and heard oral argument on the same. We now conclude they lack standing.

It is a "bedrock principle of federal Indian law that every tribe is 'capable of managing its own affairs and governing itself.'" *Cal. Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1263 (D.C. Cir. 2008) (quoting *Cherokee Nation v. Georgia*, 30 U.S. (5 Pet.) 1, 16 (1831)); *see also Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 62 (1978) (discussing the "well-established federal policy of furthering Indian self-government" (quoting *Morton v. Mancari*, 417 U.S. 535, 551 (1974)) (internal quotation marks omitted)). The Echo Hawk letter acknowledges that the Timbisha Shoshone resolved their *own* leadership dispute through a valid *internal* tribal process. *See* Appellees' 28(j) Ltr. Attach. 1, at 3 ("The April 29 election — not my March 1 Order — constituted the resolution of an internal tribal dispute in a valid tribal forum.").

The Second Circuit has noted that "[t]he [Government's] determination that [a certain member] does not represent . . . [a tribe] may well moot plaintiffs' claims."

*Shenandoah v. U.S. Dep't of Interior*, 159 F.3d 708, 713 (2d Cir. 1998). We agree. In these circumstances, we owe deference to the judgment of the Executive Branch as to who represents a tribe. *See Miwok*, 515 F.3d at 1267 ("Although the sovereign nature of Indian tribes cautions the Secretary not to exercise freestanding authority to interfere with a tribe's internal governance, the Secretary has the power to manage '*all* Indian affairs and . . . *all* matters *arising out of Indian relations*.'" (quoting 25 U.S.C. § 2)); *see also United States v. Holliday*, 70 U.S. (3 Wall.) 407, 419 (1866) ("In reference to [matters of tribal recognition], it is the rule of this court to follow the action of the executive and other political departments of the government, whose more special duty it is to determine such affairs."). There is no dispute here that Assistant Secretary Echo Hawk's letter is authentic and constitutes final agency action. *See United States v. Chemical Found., Inc.*, 272 U.S. 1, 14-15 (1926) ("The presumption of regularity supports the official acts of public officers and, in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties. Under that presumption, it will be taken that [officials have] acted upon knowledge of the material facts." (internal citations omitted)).

The Kennedy faction is unhappy with how the election was run, who voted, and the results, but ours is not the forum for that debate. Both parties agreed at oral argument that we have all the necessary facts to decide whether the plaintiffs have standing to bring this suit, and we need not remand to the district court. Oral Arg. Tr. 14, 17. The fact is that we have a letter from the Executive Branch recognizing the Gholson faction, and we must not turn a blind eye to facts in assessing jurisdiction. *See Land v. Dollar*, 330 U.S. 731, 735 n.4 (1947) ("In passing on a motion to dismiss because the complaint fails to state a cause of action, the facts set forth in

the complaint are assumed to be true . . . . But when a question of the District Court's jurisdiction is raised, . . . the court may inquire, by affidavits or otherwise, into the facts as they exist."). As John Adams famously observed, "Facts are stubborn things," DAVID MCCULLOUGH, JOHN ADAMS 68 (2001), and the facts here are stubbornly clear.

Our decision has no impact on the litigation in the Eastern District of California or, if that litigation is successful, on the plaintiffs' ability to re-file this lawsuit. *See Kasap v. Folger Nolan Fleming & Douglas, Inc*., 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("[D]ismissals for lack of jurisdiction are not decisions on the merits and therefore have no *res judicata* effect on subsequent attempts to bring suit in a court of competent jurisdiction."). We only consider standing, and we conclude that the Kennedy faction has none.

## III

The district court's order dismissing the case for failure to state a claim is *vacated* and the case is *remanded* with instructions to dismiss the complaint for lack of jurisdiction.

*So ordered.*