Cayuga Nation v Campbell (2018 NY Slip Op 05427)





Cayuga Nation v Campbell


2018 NY Slip Op 05427


Decided on July 25, 2018


Appellate Division, Fourth Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 25, 2018
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: WHALEN, P.J., SMITH, CARNI, NEMOYER, AND TROUTMAN, JJ.


806 CA 17-01956

[*1]CAYUGA NATION, BY AND THROUGH ITS LAWFUL GOVERNING BODY, CAYUGA NATION COUNCIL, PLAINTIFF-RESPONDENT,
v
SAMUEL CAMPBELL, CHESTER ISAAC, JUSTIN BENNETT, KARL HILL, SAMUEL GEORGE, DANIEL HILL, TYLER SENECA, MARTIN LAY, WILLIAM JACOBS, WARREN JOHN, WANDA JOHN, BRENDA BENNETT, PAMELA ISAAC, ET AL., DEFENDANTS-APPELLANTS, AND COUNTY OF SENECA, INTERVENOR. (APPEAL NO. 1.) 






MARGARET A. MURPHY, P.C., ORCHARD PARK (MARGARET A. MURPHY OF COUNSEL), AND JOSEPH J. HEATH, SYRACUSE, FOR DEFENDANTS-APPELLANTS. 
JENNER & BLOCK LLP, WASHINGTON, D.C. (DAVID W. DEBRUIN, OF THE WASHINGTON, D.C. BAR, ADMITTED PRO HAC VICE, OF COUNSEL), AND BARCLAY DAMON LLP, ROCHESTER, FOR PLAINTIFF-RESPONDENT.


 Appeal from an order of the Supreme Court, Seneca County (Dennis F. Bender, A.J.), dated September 18, 2017. The order, insofar as appealed from, denied the motion of defendants to dismiss the complaint. 
It is hereby ORDERED that the order so appealed from is affirmed without costs.
Memorandum: This litigation involves a long-standing dispute over which of two competing factions should have control of the Cayuga Nation (Nation), a sovereign Indian Nation and a member of the Haudenosaunee Confederacy, sometimes called the Iroquois Confederacy. Plaintiff, whose members constitute one of the two factions vying for control of the Nation (hereafter, plaintiff's members), commenced this action seeking declaratory and injunctive relief as well as money damages. In the complaint, plaintiff's members alleged that defendants, who are members of the other competing faction, were improperly in control of and trespassing on certain property of the Nation on which the Nation's offices and security center, a cannery, a gas station and convenience store, and an ice cream store were located. Plaintiff moved for various interim relief, including a preliminary injunction directing defendants to vacate the subject property. Thereafter, defendants moved to dismiss the complaint on, inter alia, the ground that Supreme Court lacked subject matter jurisdiction because this matter required a determination whether plaintiff or defendants constituted the proper governing body of the Nation. In support of their motion, defendants contended that such a determination was beyond the authority of the courts of New York inasmuch as it usurped the sovereign right of the people of the Nation to determine their own leadership. In appeal No. 1, defendants appeal from an order that, among other things, granted plaintiff's motion, issued a preliminary injunction, denied defendants' motion, and determined that no undertaking pursuant to CPLR 6213 (b) was required. We affirm.
Defendants thereafter moved for leave to reargue their opposition to plaintiff's motion, and for an order staying the preliminary injunction and setting an amount for the undertaking. In appeal No. 2, defendants appeal from an amended order that, inter alia, denied that part of their motion for leave to reargue, but granted that part of their motion with respect to the undertaking. [*2]This Court subsequently modified the amended order by reducing the amount of the undertaking.
Initially, we note that the amended order in appeal No. 2 insofar as it denied that part of defendants' motion for leave to reargue is not appealable (see Empire Ins. Co. v Food City, 167 AD2d 983, 984 [4th Dept 1990]). In addition, we note that defendants do not present any contentions on appeal with respect to the amended order in appeal No. 2, and thus they are deemed to have abandoned any issue with respect to that amended order (see Ciesinski v Town of Aurora, 202 AD2d 984, 984 [4th Dept 1994]). We therefore dismiss appeal No. 2 in its entirety (see Gaiter v City of Buffalo Bd. of Educ., 142 AD3d 1349, 1350 [4th Dept 2016]).
By way of background in appeal No. 1, plaintiff and defendants have vied for control of the Nation for more than a decade (see Cayuga Indian Nation of N.Y. v Eastern Regional Director, 58 IBIA 171, 172-176 [2014]). Defendants contend that they constitute the lawful governing body of the Nation under its historical governing structure, which was established by its oral tradition and is comprised of Chiefs and certain citizens of the Nation who were appointed by the Clan Mothers. Plaintiff's members are other citizens of the Nation who contend that they constitute the lawful governing body inasmuch as the majority of the Nation's citizens support them as the Nation's leaders. They contend that the support of the Nation's citizens was affirmed by a procedure that was recognized by the Nation's oral law and traditions and that permitted determinations on matters of great importance to be made by the entire Nation.
Before defendants took control of the relevant property, plaintiff effectively controlled the Nation because the United States Department of the Interior, Bureau of Indian Affairs (BIA), continued to recognize two of plaintiff's members as the Nation's federal representative and alternative representative for interactions between the Nation and the federal government even after the split between the factions occurred, including recognizing those members of plaintiff as the payees for any federal funds paid to the Nation. The BIA continued to recognize those members of plaintiff because they were the last federal representative and alternative federal representative authorized by the Nation to interact with federal government prior to that split.
After defendants took control of the relevant property, plaintiff commenced a prior action in Supreme Court seeking to regain control of the property. The court dismissed the complaint on the ground that it lacked subject matter jurisdiction to determine which faction should control the property inasmuch as any such determination required the court to intervene in the Nation's internal government affairs. Although the BIA thereafter attempted to broker a settlement between the parties, those negotiations were unsuccessful.
In 2016, plaintiff and defendants each submitted to the BIA competing Indian Self-Determination and Education Assistance Act (ISDA) 638 Proposals (638 Proposals) (see generally 25 USCA § 5321), which are requests for federal funding for the Indian tribal organization's infrastructure, education or other needs. Significantly, both parties' 638 Proposals sought funds to maintain the Nation's office, which, as noted, is located on the subject property. When the BIA was unable to negotiate a settlement of the competing proposals, the Eastern Regional Director of the BIA (BIA Regional Director) requested that the parties submit briefs supporting their respective positions that they are the true governing body of the Nation. In response, plaintiff presented evidence that it engaged in an initiative, i.e., a statement of support process, pursuant to which a majority of the Nation's citizens indicated that they recognized plaintiff as the lawful governing body of the Nation. Defendants submitted evidence indicating that they were the lawful governing body of the Nation pursuant to its long-standing traditions, and that the Nation's oral laws and traditions prohibited a majority-rule "election" such as the one conducted by plaintiff. Plaintiff countered by submitting evidence that the Great Law of Peace, by which the Nation is governed, permits matters of great importance to be determined by the entire Nation rather than by the Clan leaders. The BIA Regional Director determined that the BIA would recognize plaintiff as the lawful governing body of the Nation for purposes of the 638 Proposals, and awarded the ISDA contract to plaintiff.
In making his determination, the BIA Regional Director identified several reasons why the BIA was required to determine which faction controlled the Nation in addition to deciding which 638 Proposal to accept, including that the BIA needed to make determinations regarding a Liquor Control Ordinance proposed by plaintiff and the Nation's application to conduct Class II gaming on its property. The BIA Regional Director concluded that the federal government [*3]required a specific entity with whom to negotiate when resolving those matters. In recognizing plaintiff as the Nation's governing body, the BIA Regional Director concluded that, "[v]ia the statement of support process, a significant majority of the Cayuga citizens have stated their support for [plaintiff. He therefore could not] consider this outcome as anything other than resolution of a tribal dispute by a tribal mechanism. [He] consider[ed himself] obligated to recognize the result of that tribal process." Defendants appealed that determination, which was affirmed by a decision of the Acting Assistant Secretary of Indian Affairs. Defendants also commenced a federal district court proceeding challenging the BIA's determination, but that court declined to overturn it (Cayuga Nation v Zinke, 302 F Supp 3d 362, 364 [D DC 2018]).
Thereafter, plaintiff commenced this action and, as relevant, defendants challenge only that part of the order denying their motion to dismiss the complaint for lack of subject matter jurisdiction. As noted above, we affirm.
Defendants contend that the court erred in denying their motion because the courts of New York have no power to determine who controls the Nation. Although we agree with defendants that we may not resolve the Nation's leadership dispute, we are not required to do so in this appeal. Rather, we accord due deference to the BIA's conclusion that the Nation, at least with respect to that issue, has resolved the dispute in favor of plaintiff.
Indian Nations are "unique aggregations possessing attributes of sovereignty over both their members and their territory . . . ; they are a separate people' possessing the power of regulating their internal and social relations' " (United States v Mazurie, 419 US 544, 557 [1975]). Thus, federal courts lack authority to resolve internal disputes about tribal law or governance (see Shenandoah v United States Dept. of the Interior, 159 F3d 708, 712 [2d Cir 1998]; Runs After v United States, 766 F2d 347, 352 [8th Cir 1985]). The same rule applies to the courts of New York State. Therefore, "New York courts do not have subject matter jurisdiction over the internal affairs of Indian tribes" (Seneca v Seneca, 293 AD2d 56, 58 [4th Dept 2002]), and "an election dispute concerning competing tribal councils" is a "non-justiciable intra-tribal matter" (Matter of Sac & Fox Tribe of Miss. in Iowa/Meskwaki Casino Litig., 340 F3d 749, 764 [8th Cir 2003]).
Nevertheless, "[a]lthough the sovereign nature of Indian tribes cautions the Secretary [of the Interior and the BIA] not to exercise freestanding authority to interfere with a tribe's internal governance, the Secretary has the power to manage all Indian affairs and . . . all matters arising out of Indian relations' " (California Valley Miwok Tribe v United States, 515 F3d 1262, 1267 [DC Cir 2008], quoting 25 USC § 2; see Timbisha Shoshone Tribe v Salazar, 678 F3d 935, 938 [DC Cir 2012]). Therefore, "the BIA has the authority to make recognition decisions regarding tribal leadership, but only when the situation [has] deteriorated to the point that recognition of some government was essential for Federal purposes' . . . Thus, the BIA has both the authority and responsibility to interpret tribal law when necessary to carry out the government-to-government relationship with the tribe' " (Cayuga Nation v Tanner, 824 F3d 321, 328 [2d Cir 2016]). That includes "the responsibility to ensure that the Nation's representatives, with whom it must conduct government-to-government relations, are the valid representatives of the Nation as a whole" (Seminole Nation of Okla. v Norton, 223 F Supp 2d 122, 140 [D DC 2002]; see California Valley Miwok Tribe, 515 F3d at 1267). Pursuant to federal law, "we owe deference to the judgment of the Executive Branch as to who represents a tribe" (Timbisha Shoshone Tribe, 678 F3d at 938).
Here, the BIA determined that it will conduct government-to-government relations with plaintiff. Based on that determination, the BIA awarded an ISDA contract to plaintiff for the purpose, among others, of running the Nation's office. In this action, plaintiff seeks several forms of relief, including possession of and the ability to run the Nation's office. Thus, although we may not make a determination that will interfere with the Nation's governance and right to self determination, we must defer to the federal executive branch's determination that the Nation has resolved that issue, especially where, as here, that determination concerns the very property that is the subject of this action.
We caution that we do not determine which party is the proper governing body of the Nation, nor does our determination prevent the Nation from resolving that dispute differently according to its law in the future. The Nation, as a sovereign body, retains full authority to [*4]reconcile its own internal governance disputes according to its laws. Until such action occurs, however, we accord deference to the BIA's determination that plaintiff is the proper body to enforce the Nation's rights, including its rights to control the property at issue in this action.
All concur except Whalen, P.J., and Carni, J., who dissent and vote to reverse the order insofar as appealed from in accordance with the following memorandum: We respectfully dissent in appeal No. 1. As the majority recognizes, "New York courts do not have subject matter jurisdiction over the internal affairs of Indian tribes" (Seneca v Seneca, 293 AD2d 56, 58 [4th Dept 2002]; see also Cayuga Nation v Tanner, 824 F3d 321, 327 [2d Cir 2016]). Here, this action was commenced on behalf of the Cayuga Nation (Nation) by certain individual members claiming to comprise the Nation's governing council by virtue of a decision of the Bureau of Indian Affairs (BIA) that recognized those members of the now-denominated "Cayuga Nation Council" for the purpose of a government-to-government relationship between the Nation and the United States. The individual defendants include clan chiefs, clan mothers, and clan representatives who also claim to constitute the governing council of the Nation under its traditional laws, a council that has also previously been recognized by the BIA for the purpose of the government-to-government relationship. In affirming the order in appeal No. 1, the majority assumes that, once deference is afforded to the most recent BIA decision, Supreme Court has jurisdiction to resolve the claims in the complaint without impermissibly intruding into issues of the Nation's internal governance. We cannot agree.
Initially, the majority's assumption ignores the specific claims alleged in the complaint. The complaint asserts causes of action for trespass, conversion, tortious interference with prospective business relations, replevin, and ejectment based on defendants' allegedly unlawful actions in exercising dominion over Nation property, managing Nation funds, and operating Nation businesses "without permission or justification." Each of those causes of action requires proof that the individual defendants acted without any authority or justification with respect to their use and possession of the Nation's property (see KAM Const. Corp. v Bergey, 151 AD3d 1706, 1707 [4th Dept 2017]; Reeves v Giannotta, 130 AD3d 1444, 1444 [4th Dept 2015]; National Fuel Gas Distrib. Corp. v Push Buffalo [People United for Sustainable Hous.], 104 AD3d 1307, 1309 [4th Dept 2013]; Nissan Motor Acceptance Corp. v Scialpi, 94 AD3d 1067, 1068 [2d Dept 2012]; Schick v Wolf, 207 App Div 652, 655 [4th Dept 1924]). Here, although the complaint alleges that defendants' unlawful conduct began on April 28, 2014, the complaint also alleges that "the Nation's leadership dispute was [not] brought to a final resolution" until the July 14, 2017 decision of the Acting Assistant Secretary of Indian Affairs (Assistant Secretary). Thus, the court will be required to resolve issues of tribal law, specifically the parties' conflicting claims of their legitimate representation of the Nation, to the extent that the complaint seeks relief for defendants' actions prior to July 14, 2017 (cf. Cayuga Nation, 824 F3d at 328). Indeed, the court expressly acknowledged that it will be required to determine if any individual defendants were acting in their official capacities as Nation representatives to determine whether the defense of sovereign immunity is available. That intrusion into matters of tribal law falls outside the court's jurisdiction (see Seneca, 293 AD2d at 58).
Moreover, in order to conclude that the court has the authority to determine whether the "Cayuga Nation Council" is entitled to relief on the complaint's causes of action from July 14, 2017 forward without impermissibly resolving issues of tribal law, we must conclude that defendants are collaterally estopped by the BIA determination from asserting in their defense that they possess legitimate authority to act on behalf of the Nation. The BIA, however, did not render a final resolution of the parties' conflicting claims of legitimate governmental authority that would have a preclusive effect on defendants' further assertion of legitimacy (see Jones v Town of Carroll, 158 AD3d 1325, 1328 [4th Dept 2018], lv dismissed — NY3d &mdash, 2018 NY Slip Op 71838 [2018]; see generally Yanguas v Wai Wai Pun, 147 AD2d 635, 635 [2d Dept 1989]). Instead, as recognized by Eastern Regional Director of the BIA (BIA Regional Director), the BIA undertook to resolve the sole issue of "which governing council to recognize for purposes of entering into a contract to provide the[] services" requested in the parties' competing "Community Services 638" contract proposals. The "competing proposals for [the] 638 contract require[d], and therefore permit[ted], the BIA to determine whether either of the proposals was submitted by the governing body of the Cayuga Nation." In choosing between the two separate councils for that purpose, the BIA made no finding that defendants lacked any colorable claim to the management of the Nation's affairs or that any individual defendant had been unlawfully acting on behalf of the Nation. Indeed, the BIA Regional Director stated that his reliance on the [*5]statement of support process "should not freeze the Nation with its current configuration of leaders." He further recognized that "[g]oing forward, the meaning of the statement of support campaign is a question of Cayuga Nation law."
The Assistant Secretary similarly emphasized the limited import of the statement of support process when he affirmed the BIA Regional Director's decision to award the 638 contract to the "Cayuga Nation Council." Specifically, the Assistant Secretary recognized that the statement of support process "was designed to establish a baseline tribal government through which [the] BIA could perpetuate its government-to-government relationship with the Nation." It nonetheless remained "the Nation's right, and responsibility, to determine how its governance will operate moving forward — whether via the Nation's traditional consensus process," for which defendants advocate, "through some form of electoral process, or however else."
The BIA determination therefore does not preclude defendants from contending that they had and continue to have a legitimate claim under traditional law to exercise authority over the property at issue as Nation representatives, and as such the "Cayuga Nation Council" cannot establish that defendants are collaterally estopped from raising that contention in defense of the claims against them (see Kaufman v Eli Lilly & Co., 65 NY2d 449, 456 [1985]). Inasmuch as the issue of defendants' legitimate authority or justification is material to each of the causes of action in the complaint, the court cannot rule on those claims without impermissibly resolving questions of tribal law (see Seneca, 293 AD2d at 58; cf. Cayuga Nation, 824 F3d at 330). Thus, we would reverse the order insofar as appealed from, grant defendants' motion to dismiss the complaint, and vacate the first through fourth ordering paragraphs.
Entered: July 25, 2018
Mark W. Bennett
Clerk of the Court