# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued September 9, 2019        Decided April 14, 2020

No. 17-7168

SHABTAI SCOTT SHATSKY, INDIVIDUALLY AND AS PERSONAL
REPRESENTATIVE OF THE ESTATE OF KEREN SHATSKY, ET AL.,
APPELLANTS

v.

PALESTINE LIBERATION ORGANIZATION, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:02-cv-02280)

*Tejinder Singh* argued the cause for appellants. With him
on the briefs were *Charles H. Davis*, *Robert Joseph Tolchin*,
and *Meir Katz*.

*Mitchell R. Berger* argued the cause for appellees. With
him on the brief were *Gassan A. Baloul*, *Amy B. Doolittle*,
*Alexandra E. Chopin*, and *Aaron W. Knights*.

Before: HENDERSON, MILLETT, and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* MILLETT.

2

MILLETT, *Circuit Judge*:  The American victims of a 2002 suicide bombing in the West Bank and their families (collectively, "the Families") brought this suit under the Anti-Terrorism Act, 18 U.S.C. §§ 2331 *et seq.*, against two entities that they believe are among those responsible for the attack. Specifically, the Families allege that the Popular Front for the Liberation of Palestine ("Popular Front"), a designated foreign terrorist organization, orchestrated the 2002 bombing.  *See* Families' Response to Palestinian Defendants' Statement of Material Facts at ¶¶ 1–13, *Shatsky v. Palestine Liberation Org.*, No. 1:02-cv-02280-RJL (D.D.C. Jan. 29, 2016), ECF No. 331 at 59–65.  In this case, the Families seek to hold the Palestinian Authority and the Palestine Liberation Organization (collectively, "the Palestinian Defendants") liable for the attack on the theory that they enabled the bombing through their provision of significant support to the Popular Front.

As described in the complaint, the harms suffered by the Families as a result of the bombing are tragic and horrific.  This case, though, turns not on the merits of their claims for remediation, but on the narrow question of where those claims should be litigated.  We hold that the district court erred in rejecting the Palestinian Defendants' argument that the court lacked personal jurisdiction.  We therefore vacate the district court's judgment and remand for it to dismiss the case without prejudice.

**I**

**A**

On February 16, 2002, a suicide bomber attacked a pizzeria in Karnei Shomron, a town in the West Bank.  The bombing killed United States citizens Keren Shatsky and Rachel Thaler and wounded United States citizens Steven Braun, Chana Friedman, Leor Thaler, and Hillel Trattner, along

with a non-citizen, Ronit Trattner.  For the purpose of summary judgment only, the parties agree that the bomber was Sadeq Ahed Mahmoud Abdel Hafez.  Palestinian Defendants' Response to Families' Reconstituted Statement of Purported Material Facts at ¶ 5, *Shatsky*, No. 1:02-cv-02280-RJL (D.D.C. March 2, 2016), ECF No. 332-1; Families' Response to Palestinian Defendants' Statement of Material Facts, *supra*, at ¶ 5, ECF No. 331 at 61.

In November 2002, the Shatsky family, Steven Braun, and the other bombing survivors and their families filed suit against (i) the Palestinian Defendants, (ii) Syria and several Syrian governmental entities and individuals ("Syrian Defendants"), and (iii) 99 Doe defendants.  The Families asserted claims under the Anti-Terrorism Act, which authorizes "[a]ny national of the United States injured in his or her person, property, or business by reason of an act of international terrorism, or his or her estate, survivors, or heirs," to sue for treble damages "in any appropriate district court of the United States[,]" 18 U.S.C. § 2333(a).

The Palestinian Authority is a government established following the 1993 Oslo Accords between Israel and the Palestine Liberation Organization.  *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 47 (D.C. Cir. 2017).  The Authority is headquartered in the West Bank and provides civilian and internal security services in parts of the West Bank and Gaza Strip.  *Id.*  The Palestine Liberation Organization, commonly known as the "PLO," is the international representative of the Palestinian people.  Families' Response to Palestinian Defendants' Statement of Material Facts, *supra*, at 18, ECF No. 331 at 76.

The Popular Front is one of the seven "factions" that make up the PLO.  J.A. 89.  The United States government has

designated the Popular Front a foreign terrorist organization. *See* 8 U.S.C. § 1189; *see also* Designation of Foreign Terrorist Organizations, 62 Fed. Reg. 52,650, 52,650 (Oct. 8, 1997) (original designation); *In re* Review of the Designation of Popular Front for the Liberation of Palestine (and Other Aliases) as a Foreign Terrorist Organization, 80 Fed. Reg. 25,766, 25,766 (May 5, 2015) (maintaining the designation).

The Families allege that the Popular Front planned and carried out the bombing. They contend that the Palestinian Defendants facilitated the bombing by providing financial support to the Popular Front. Specifically, they accuse the Palestinian Defendants of (i) paying the alleged mastermind, Ra'ed Nazal, a salary for a no-show job; (ii) covering some of the Popular Front's necessary expenses, including rent for its office in the nearby city Qalqilya, and (iii) providing what the Families call "martyr payments" to Nazal's and Hafez's families after their deaths. *See* Families' Br. 27–28.

**B**

**1**

Due to a number of procedural complexities, this case wended its way through district court for fifteen years. The case started when the Families filed their complaint in November 2002 and served the Palestinian Defendants in July 2003.

Two months later, the Syrian Defendants and the Palestinian Defendants jointly moved for a protective order to prevent the Families from moving forward with depositions before the defendants' "sovereign and governmental immunity[] and other defenses" could be litigated. Defendants' Motion for Protective Order at 1–2, *Shatsky*, No. 1:02-cv-02280-RJL (D.D.C. Sept. 11. 2003), ECF No. 14.

That same day, the Clerk of the Court entered a default against the Palestinian Defendants under Federal Rule of Civil Procedure 55(a) because they had not responded to the complaint by what the Families asserted was the deadline. By way of explanation, Rule 55(a) requires the Clerk to enter a default when a defendant "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise[.]" FED. R. CIV. P. 55(a). Once the Clerk does so, the plaintiff may "apply to the court for a default judgment" under Rule 55(b). FED. R. CIV. P. 55(b)(2).

The Palestinian Defendants then moved to strike that default and requested additional time to respond to the complaint. While those motions were still pending, the Palestinian Defendants moved to dismiss the complaint under Federal Rule of Civil Procedure 12(b), asserting among other things sovereign and governmental immunity and lack of personal jurisdiction. As for personal jurisdiction, the Palestinian Defendants argued that they lacked the minimum contacts with the United States that the Due Process Clause requires. They explained that their only contacts with the United States were the activities of Palestine's Mission to the United Nations and its ambassador in New York. The Palestinian Defendants argued that those diplomatic contacts were "government contacts" that could not provide a basis for personal jurisdiction. J.A. 147–148.

On June 23, 2004, the district court entered minute orders granting the motions for a protective order and to strike the entry of default.

Eight months later, the district court denied the Palestinian Defendants' motion to dismiss in a minute order that provided no reasoning. At a status hearing the next month, the Palestinian Defendants requested an explanation, but the

district court declined to provide one. The Palestinian Defendants then informed the court that they planned to rest their defense entirely on jurisdiction and were contemplating an interlocutory appeal.

The Palestinian Defendants, however, never took an interlocutory appeal. After the Palestinian Defendants failed to file an answer or otherwise participate in the litigation, the Clerk of the Court entered a second default against them on April 12, 2005.

The next month, the Families voluntarily dismissed their claims against the Syrian Defendants without prejudice.[1]

On January 31, 2006, the Palestinian Defendants informed the district court that they had new political leadership and sought a stay until May 1, 2006 to allow the new government to decide how to handle the litigation. The district court denied the motion as moot in a May 30, 2006 minute order.

Almost a year later, the Families asked the court to enter a default judgment against the Palestinian Defendants under Federal Rule of Civil Procedure 55(b). In their brief opposing the motion, the Palestinian Defendants reasserted their personal jurisdiction argument: "For the reasons presented in their Motion to Dismiss and supporting memorandum, the [Palestinian Defendants] continue to contend that they have insufficient contacts with the United States to warrant the Court's exercise of personal jurisdiction over them and reserve that issue." J.A. 161 (citation omitted).

---

[1] A plaintiff may "dismiss an action without a court order by filing * * * a notice of dismissal" so long as the opposing party has not yet "serve[d] either an answer or a motion for summary judgment[.]" FED. R. CIV. P. 41(a)(1)(A)(i).

**2**

The Palestinian Defendants tried a new approach in December 2007.  They moved to vacate the Clerk's entry of default, emphasizing that they were now "committed to litigating the case on the merits."  J.A. 182 (formatting modified).  The Palestinian Defendants explained that, earlier in the litigation, they "might rightly have wondered why they would be haled into U.S. courts to litigate claims" that arose abroad "against the backdrop of the Palestinian–Israeli conflict."  J.A. 183.  But they told the court that they "ha[d] come to appreciate that they need to address these cases head on, rather than continuing to rely exclusively on jurisdictional defenses."  J.A. 183.

At the same time, the Palestinian Defendants filed an answer that both responded to the merits of the complaint's allegations and, as relevant here, raised lack of personal jurisdiction as an affirmative defense.  The Palestinian Defendants' brief in support of vacating the default "confined their discussion" of the "meritorious defense" requirement for vacatur "to [the Palestinian Defendants'] lack of responsibility" for the bombing.  J.A. 205–206.  But the Palestinian Defendants also were explicit that, in focusing their argument on the merits, they did not "waiv[e] any of the defenses raised in the verified answer[.]"  J.A. 205.

Three and a half years later, the district court granted the Palestinian Defendants' motion and vacated the default. *Shatsky v. Syrian Arab Republic*, 795 F. Supp. 2d 79, 81 (D.D.C. 2011).  Although the court found the default willful— in large part because the Palestinian Defendants' previous counsel had represented that they "only intended to litigate jurisdiction and nothing more"—the court was "now convinced that [the Palestinian Defendants are] truly committed to

litigating this matter." *Id.* at 82–83. Because of that, the district court concluded that the Palestinian Defendants' "willfulness alone does not, on balance, preclude vacatur," and that other considerations warranted "allow[ing] the parties to proceed on the merits." *Id.* at 83–85.

After nearly two years of discovery, the Palestinian Defendants moved for summary judgment on the merits in August 2013. They did not raise personal jurisdiction as an additional ground for summary judgment.

While that motion was pending, the Supreme Court decided *Daimler AG v. Bauman*, 571 U.S. 117 (2014). That case held that a court may exercise general jurisdiction over a nonresident corporation only if the corporation is "essentially at home in the forum." *Id.* at 138–139. Absent exceptional circumstances, that standard is met only in the corporation's "formal place of incorporation or principal place of business[.]" *Id.* at 139 n.19.

Based on *Daimler*, the Palestinian Defendants promptly moved for reconsideration of the district court's earlier denial of their motion to dismiss for lack of personal jurisdiction. The district court denied reconsideration solely on the ground that the Palestinian Defendants had "repeatedly manifested their consent to the Court's jurisdiction through their conduct," and so had forfeited their personal jurisdiction objection. J.A. 300–301. The district court stressed that, in seeking vacatur of the default, the Palestinian Defendants had "informed [the] Court of their 'seriousness' and the 'good faith' with which they intended to litigate their 'strong meritorious defenses.'" J.A. 301 (quoting Memorandum in Support of Palestinian Defendants' Motion to Vacate Clerk's Entry of Default at 5, J.A. 176; and quoting *id.* at 40, J.A. 211). The district court added that, although their answer "purportedly preserved the

personal jurisdiction defense," the Palestinian Defendants' August 2013 summary judgment motion did not "includ[e] a challenge to personal jurisdiction[.]" J.A. 301. The district court subsequently denied reconsideration of that ruling.

In September 2016, the Palestinian Defendants again pressed their personal jurisdiction defense, arguing in a supplemental brief in support of summary judgment that the court should reconsider its forfeiture determination in light of *Waldman v. Palestine Liberation Organization*, 835 F.3d 317 (2d Cir. 2016).

The district court subsequently granted summary judgment for the Palestinian Defendants. *Shatsky v. Palestine Liberation Org.*, No. 1:02-cv-02280-RJL, 2017 WL 2666111, at *11 (D.D.C. June 20, 2017). The court first denied reconsideration of its finding of personal jurisdiction. *Id.* at *5–6. The court distinguished *Waldman* as turning on a change in Second Circuit law that made available in that circuit a new argument against personal jurisdiction. *Id.* at *5. The court held that, by contrast, the argument pressed by the Palestinian Defendants had been available to them all along, and so was forfeitable. *Id.*

On the merits, the court held that the Palestinian Defendants were entitled to summary judgment on the Anti-Terrorism Act claims because no reasonable jury could find that they had proximately caused the bombing. *Shatsky*, 2017 WL 2666111, at *6–10.[2]

---

[2] The district court also granted summary judgment on the Families' common law tort claims, reasoning that under District of Columbia law, the Palestinian Authority and the PLO were each unincorporated associations that could not be sued in tort. *Shatsky*,

10

The Families timely moved for reconsideration under Federal Rule of Civil Procedure 59(e), which the district court denied. *Shatsky v. Palestine Liberation Org.*, 292 F. Supp. 3d 188, 192, 195 (D.D.C. 2017).

The Families timely filed a notice of appeal. FED. R. APP. P. 4(a)(1)(A), (4)(A)(iv). The Palestinian Defendants did not file a cross-appeal.

**II**

We first confront the question whether the district court's grant of summary judgment to the Palestinian Defendants constitutes a final, appealable judgment despite the Families' earlier decision to voluntarily dismiss their claims against the Syrian Defendants without prejudice. Because the Families were not attempting to circumvent the statutory limitation on jurisdiction and because the district court remained in full control over the litigation's progress to the dispositive entry of summary judgment, we hold that the district court's ruling is an appealable final judgment.

**A**

The district court exercised federal question jurisdiction over the Anti-Terrorism Act claims and supplemental jurisdiction over the non-federal common law claims. *See* 28 U.S.C. § 1331 (federal question); *id.* § 1367(a) (supplemental).

Under 28 U.S.C. § 1291, we have jurisdiction to review "final decisions" of the district courts. The district court's grant of summary judgment in favor of the Palestinian Defendants would certainly be final had they been the only

---

2017 WL 2666111, at *10–11. The Families do not appeal that portion of the district court's decision.

defendants all along. But the complaint also seeks relief from nine Syrian Defendants. In 2005, twelve years before the summary judgment ruling in favor of the Palestinian Defendants, the Families voluntarily dismissed the claims in their complaint against the Syrian Defendants. The question, then, is whether that voluntary dismissal rendered the district court's summary judgment order non-final. It did not.

A decision is final when it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Blue v. District of Columbia Pub. Sch.*, 764 F.3d 11, 15 (D.C. Cir. 2014) (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–522 (1988)). By contrast, a decision that "resolves some, but not all, of the claims in a complaint * * * is generally non-final and non-appealable." *Dukore v. District of Columbia*, 799 F.3d 1137, 1140 (D.C. Cir. 2015). With a handful of exceptions not relevant here, a party may appeal such a partial disposition only with the district court's permission, pursuant to Federal Rule of Civil Procedure 54(b). *See Dukore*, 799 F.3d at 1140.

In *Blue*, we held that, when a district court enters a partial final judgment as to some but not all parties, a would-be appellant cannot concoct finality by agreeing with the remaining defendants to dismiss the claims against them without prejudice, subject to an agreement that would allow revival of those claims after the appeal. 764 F.3d at 14–15. As a result, "party-initiated" dismissals without prejudice are "generally insufficient to render final and appealable a prior order disposing of only part of the case." *Id.* at 16–17. That prevents parties from "taking over the 'dispatcher' function that [Rule 54(b)] vests in the trial judge to control the circumstances and timing of the entry of final judgment." *Blue*, 764 F.3d at 18 (quoting *Robinson–Reeder v. American Council on Educ.*, 571 F.3d 1333, 1340 (D.C. Cir. 2009)). And

allowing parties to create their own superficial finality could "generate overlapping lawsuits, piecemeal appeals, and splintered and harassing litigation." *Blue*, 764 F.3d at 18.

Put simply, "[p]arties cannot stipulate their way out of the final judgment rule or Rule 54(b)'s strict limitations." *Dukore*, 799 F.3d at 1141. It is the "district court, not the parties," that must "control[] the terms of dismissal" so as to prevent "manipulation of the courts' jurisdiction." *Id.*

The grant of summary judgment to the Palestinian Defendants in this case was a final, appealable judgment because the earlier dismissal of the Syrian Defendants was neither designed to nor had the effect when entered of turning a partial judgment into an artificially final judgment for appeal. Quite the opposite, dismissal of the Syrian Defendants occurred twelve years *before* summary judgment issued. So the voluntary dismissal plainly did not foreseeably operate to render that long-into-the-future partial judgment final. Nor was the voluntary dismissal meant to open the door to an appeal. Instead, its sole function was to allow for entry of a default judgment in favor of the Families. J.A. 158. Which the Families, of course, would *not* be appealing.

Also unlike *Blue*, the voluntary dismissal did not wrest control of the litigation's finality out of the district court's hands. The Families filed two new lawsuits against the Syrian Defendants, alleging material support of terrorism under the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602 *et seq. See Shatsky v. Syrian Arab Republic*, No. 1:06-cv-00724-RJL (D.D.C.); *Shatsky v. Syrian Arab Republic*, No. 1:08-cv-00496-RJL (D.D.C). Both cases were assigned to the same district judge who presided over this ligation against the Palestinian Defendants. Importantly, the district court has remained in control of all three cases' management and progress, eventually

deciding to put the lawsuits against the Syrian Defendants on hold pending disposition of this case. J.A. 284–285. So the district court has had the full authority to keep the cases linked if it desired. Instead, the district court exercised its broad discretion to keep the cases separate, and to make the case against the Palestinian Defendants the lead one.

The district court's intent to conclusively resolve the litigation is also a "significant factor in the [finality] analysis." *Attias v. Carefirst, Inc.*, 865 F.3d 620, 624 (D.C. Cir. 2017). Here, the district court signaled that its summary judgment order was final and appealable—and need not await disposition of the Syrian Defendants' case—by ordering that "judgment is entered for the defendants." J.A. 116. If more were needed, the district court described the Families' Rule 59(e) motion to alter or amend the judgment as seeking "post-judgment relief[.]" *Shatsky*, 292 F. Supp. 3d at 192, 195.

What all of that means is that *Blue*'s fundamental concern about parties manufacturing superficial finality while hijacking the district court's control over final resolution of the litigation is not a factor in this case. The voluntary dismissal of the Syrian Defendants neither was intended to nor had the effect of creating an appealable final judgment. And importantly, the district court "alone determined when the case was over and its order became final," and so "fulfilled its function as 'gatekeeper for the court of appeals.'" *Dukore*, 799 F.3d at 1142 (quoting *Blue*, 764 F.3d at 18).

**B**

The Palestinian Defendants contend otherwise, arguing that this case and the claims against the Syrian Defendants are "a 'single judicial unit' for purposes of appellate jurisdiction" because of their "unified origin and substantial factual and

legal overlap[.]" Palestinian Defendants' Br. 4 (quoting *Sears, Roebuck & Co. v. Mackey*, 351 U.S. 427, 438 (1956)).

That argument might work if the district court had consolidated the cases and "treat[ed] them" such that "they [became] one case for the purpose of appellate jurisdiction." *Blackman*, 456 F.3d at 174 n.9 (internal quotation marks omitted). But that is not the path the district court chose. It chose instead to allow the cases to "retain[] their separate identities," *id.*, and to proceed on separate procedural paths. When that happens in consolidated cases, a judgment as to all of the claims and parties in one of the cases can be considered final under Section 1291 despite the consolidation. *See id.* Certainly if not all consolidated cases count as a single unit for determining appellate jurisdiction, then neither should cases that the district court formally keeps separate.

Nor does the presence of Doe defendants named in the complaint pose an obstacle to finality. Those defendants were never served, and there is no indication that the district court "foresees further proceedings on unresolved claims" against them. *See Kaplan v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501, 506–507 (D.C. Cir. 2018).

The long and the short of it is that, "[a]bsent appellate reversal, the federal action [before the district court] is concluded with nothing left to be done." *Dukore*, 799 F.3d at 1141–1142. The judgment is final for purposes of 28 U.S.C. § 1291, giving us appellate jurisdiction.

## III

Determining the finality of the district court's judgment does not end our jurisdictional inquiry. The Palestinian Defendants argue that the grant of summary judgment can be affirmed on the ground that the district court lacked personal

jurisdiction over them.  That question of personal jurisdiction must be resolved "before reaching the merits[.]"  *Kaplan*, 896 F.3d at 511.

The Families responded to the Palestinian Defendants' personal jurisdiction argument on the merits, without making any argument that the issue was not properly before us in the absence of a cross-appeal.  A month later, the Families changed course, filing a letter under Federal Rule of Appellate Procedure 28(j) arguing that the absence of a cross-appeal deprives this court of jurisdiction to consider the Palestinian Defendants' personal jurisdiction argument.  The Palestinian Defendants respond that the cross-appeal requirement is not jurisdictional, and that the Families forfeited their procedural objection by failing to raise it in their reply brief.

After navigating through the parties' competing procedural objections, we hold that the Palestinian Defendants properly preserved their objection to personal jurisdiction in district court, and that circuit precedent squarely forecloses the district court's exercise of personal jurisdiction.

**A**

**1**

Parties who win in the district court may advance "alternative bases for affirmance" that are properly raised and supported by the record without filing a cross-appeal, even if the district court rejected the argument.  *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 741 (D.C. Cir. 1995); *see also Jennings v. Stephens*, 135 S. Ct. 793, 798 (2015) ("An appellee who does not take a cross-appeal may 'urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court.'") (quoting *United States v. American Ry. Express*

*Co.*, 265 U.S. 425, 435 (1924)); *Ark Initiative v. Tidwell*, 816 F.3d 119, 127 (D.C. Cir. 2016).

But parties seeking to press arguments that would change or modify the district court's judgment to their benefit must cross-appeal. *See Jennings*, 135 S. Ct. at 798; *see also Singh v. George Washington Univ. Sch. of Med. & Health Sciences*, 508 F.3d 1097, 1099–1100 (D.C. Cir. 2007) (noting that a party "need not have" cross-appealed because "it sought no change in the final judgment in its favor"); *cf. Northwest Airlines, Inc. v. County of Kent*, 510 U.S. 355, 364 (1994) ("A cross-petition [for certiorari] is required * * * when the respondent seeks to alter the judgment below.").

When, as in this case, the district court rejects a defendant's claim that the court lacks personal jurisdiction, but then rules in the defendant's favor on the merits, the defendant generally must take a cross-appeal to preserve the personal jurisdiction objection. *See Spann v. Colonial Village, Inc.*, 899 F.2d 24, 32–33 (D.C. Cir. 1990). That is so for two reasons.

First, personal jurisdiction is a "forum objection," and so can be forfeited "at any stage of a proceeding[,]" including by failing to challenge the district court's exercise of jurisdiction on appeal. *Spann*, 899 F.2d at 32–33.

Second, if we conclude that the district court lacked personal jurisdiction, we must vacate—not affirm—its judgment on the merits. *See Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct 553, 562 (2017) ("A court must have the power to decide the claim before it (subject-matter jurisdiction) and power over the parties before it (personal jurisdiction) before it can resolve a case."); *see also* FED. R. CIV. P. 41(b) (providing that a dismissal "for lack of jurisdiction" does not "operate[] as an adjudication on the merits").

In addition, vacatur tends to "enlarg[e] [the prevailing party's] rights" or "lessen[] the rights of [its] adversary[,]" *Jennings*, 135 S. Ct. at 798, particularly when the defendant is a repeat player. *Cf. Camreta v. Greene*, 563 U.S. 692, 701–703 (2011) (recognizing that a party who prevails on the bottom line may have enough of a "personal stake" to challenge an adverse ruling the court made along the way). Vacatur for lack of jurisdiction would also deprive any unfavorable aspects of the district court's decision of preclusive effect. *See California Communities Against Toxics v. EPA*, 928 F.3d 1041, 1051–1052 (D.C. Cir. 2019) (claim and issue preclusion apply only when the prior case was before "a court of competent jurisdiction") (internal quotation marks omitted).

This case illustrates the concern. The Palestinian Defendants have long argued that they cannot be haled into a court of the United States to answer the Families' allegations. Given the choice between (i) a preclusive determination that such litigation cannot proceed at all, and (ii) a preclusive determination that they can be forced to answer in court but that, as it happens, they are not liable in a particular case, the Palestinian Defendants have ample reason to prefer and are more broadly benefited by the former. *See Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) (noting that, "under principles of issue preclusion," dismissals for lack of jurisdiction have "preclusive effect on the jurisdictional issue litigated").

Put another way, affirmance and vacatur both mean that the Palestinian Defendants owe the Families nothing in this case. But vacatur would have the added effect of wiping the district court's exercise of personal jurisdiction off the books, while also precluding any repeat of the litigation unless the jurisdictional situation changes. So vacatur is a modification

of the judgment that would provide an added benefit to the Palestinian Defendants.

The Palestinian Defendants point to *Gilmore v. Palestinian Interim Self-Government Authority*, 843 F.3d 958 (D.C. Cir. 2016), in which this court addressed a personal jurisdiction argument as an alternative ground for affirmance without questioning that description or the lack of a cross-appeal, *see id.* at 963–964. But there was no need to address those issues in *Gilmore* because we rejected the personal jurisdiction argument as forfeited. *See id.*

For those reasons, the Palestinian Defendants were required to file a cross-appeal to preserve their challenge to the district court's exercise of personal jurisdiction. But as it turns out, their failure to do so is not fatal.

**2**

The cross-appeal rule is "unwritten but longstanding[.]" *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). Yet unlike an original notice of appeal, "a cross-appeal is not a jurisdictional requirement." *Spann*, 899 F.2d at 33. That said, we will excuse compliance with the cross-appeal rule only in "exceptional circumstances[.]" *Id.* at 31–33 (excusing the defendant's failure to file a cross-appeal where it "plainly intended to preserve" its argument, but was reasonably confused about the timeliness of the plaintiffs' appeal).

Considering all the circumstances of this case in light of the purposes of the cross-appeal rule, we conclude that there are exceptional circumstances warranting our consideration of the personal jurisdiction issue. The cross-appeal rule protects two distinct sets of interests: (i) the opposing party's interests in notice and an adequate opportunity to brief the issue, and (ii) the structural interests in a full adversarial presentation of

issues designed to unsettle a district court ruling and the finality of judgments. *See Greenlaw*, 554 U.S. at 243–244 (describing the cross-appeal rule as "both informed by, and illustrative of, the party presentation principle[,]" meaning that courts "rely on the parties to frame the issues for decision"); *id.* at 252 (noting that the rule serves "the interests of the parties and the legal system in fair notice and finality").[3] In this case, both factors weigh in favor of entertaining the Palestinian Defendants' personal jurisdiction argument.

*First*, the Families forfeited any objection based on lack of notice or prejudice to their interests by addressing the personal jurisdiction argument on the merits in their reply brief, without any procedural complaint. They did not raise the cross-appeal issue until a post-briefing Rule 28(j) letter, which "comes too late." *Worldwide Moving & Storage, Inc. v. District of Columbia*, 445 F.3d 422, 427 n.7 (D.C. Cir. 2006); *see Williams v. Romarm, SA*, 756 F.3d 777, 787 (D.C. Cir. 2014) ("[T]he 28(j) process should not be employed as a second opportunity to brief an issue not raised in the initial briefs."). Nor have they ever claimed prejudice from the Palestinian Defendants' timing.

*Second*, the structural interests served by the cross-appeal rule are only weakly implicated here. The rule serves the court's interest in a full adversarial presentation of those arguments that seek to deprive the district court's judgment of finality by affording the parties additional opportunities to make their arguments about the issues relevant to the cross-appeal. *See* FED. R. APP. P. 28.1 (providing for higher word

---

[3] *See also El Paso Natural Gas Co. v. Neztsosie*, 526 U.S. 473, 481–482 (1999) (The rule "is meant to protect institutional interests in the orderly functioning of the judicial system, by putting opposing parties and appellate courts on notice of the issues to be litigated and encouraging repose of those that are not.").

limits and a fourth brief in cross-appeal cases); *compare* FED. R. APP. P. 32(a)(7)(B) (ordinary briefing format), *with* FED. R. APP. P. 28.1(c) & (e)(2) (cross-appeal briefing format).

The additional airing of the issues that the cross-appeal process enables would not have been helpful here. For starters, the personal jurisdiction issue was fully litigated in the district court, both as to the court's finding of forfeiture and the underlying merits. The Palestinian Defendants raised the issue in a motion to dismiss, two motions for reconsideration, and in supplemental briefing on their summary judgment motion. The Families responded each time. And although the district court never reduced its reasoning on the merits to writing, it twice explained the forfeiture ruling.

The parties also adequately briefed the personal jurisdiction issue on appeal, again addressing both forfeiture and the merits.

As for the ultimate merits, there was little for the parties to say or for this court to resolve. The Families and the Palestinian Defendants agree that existing circuit precedent directly controls the result. *See* Palestinian Defendants' Br. 19–20, 23–26; Families' Reply Br. 12 & n.2; *see also Livnat*, 851 F.3d at 56–57; *Estate of Klieman ex rel. Kesner v. Palestinian Auth.*, 923 F.3d 1115, 1123–1126 (D.C. Cir. 2019), *petition for cert. filed*, No. 19-741 (U.S. Dec. 5, 2019).

All that is really in dispute is the district court's forfeiture ruling. That is the type of "straightforward legal question" that satisfies the "extraordinary circumstances" requirement when, as here, "both parties have fully addressed the issue on appeal" and in district court. *Lesesne v. Doe*, 712 F.3d 584, 588 (D.C. Cir. 2013) (internal quotation marks omitted).

The interest in finality also has little force in this unique context, given the parties' full presentation of the issue before the district court and that court's awareness of our decision in *Livnat v. Palestinian Authority*, which all agree, in the absence of forfeiture, dictates a finding of no personal jurisdiction in this case. For those reasons, this case does not implicate concerns about sandbagging the district court that would ordinarily weigh against entertaining a belatedly raised personal jurisdiction argument. *See Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1318 (9th Cir. 1998) (suggesting that "deliberate, strategic behavior" like "sandbagging" could justify a finding that a defendant forfeited its objection to personal jurisdiction). The most that a notice of cross-appeal would have offered is that the Families would have learned slightly sooner that one additional component of the judgment—beyond the 33 orders already identified in their notice of appeal—was in play.

In sum, the Families forfeited their interest in the cross-appeal rule; the structural interests that rule ordinarily protects are near their nadir here; and the parties both agree that the personal jurisdiction question is controlled by binding circuit precedent of which the district court was fully aware. For those reasons, exceptional circumstances excuse the Palestinian Defendants' failure to cross-appeal the question of personal jurisdiction.

**B**

With the issue properly before us, we review for an abuse of discretion the district court's finding that the Palestinian Defendants forfeited their objection to personal jurisdiction. *See Klieman*, 923 F.3d at 1120–1123. "A district court abuses its discretion when it applies the wrong legal standard or relies on clearly erroneous findings of fact." *Amador County v.*

*United States Dep't of the Interior*, 772 F.3d 901, 903 (D.C. Cir. 2014). "A district court by definition abuses its discretion when it makes an error of law." *Koon v. United States*, 518 U.S. 81, 100 (1996). We conclude that the district court abused its discretion in holding that the Palestinian Defendants forfeited their objection to the exercise of personal jurisdiction in this case.

**1**

While subject-matter jurisdiction is a mandatory prerequisite for a federal court to act, the requirement that the court have personal jurisdiction over a defendant is a personal right that a defendant can choose to assert or not. *Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702–704 (1982). That means that a personal jurisdiction defense is both forfeitable and waivable. *Sickle v. Torres Advanced Enter. Sols., LLC*, 884 F.3d 338, 344 (D.C. Cir. 2018).

A defendant forfeits its objection to personal jurisdiction unless it raises the issue in a pre-answer Rule 12 motion or in a responsive pleading. FED. R. CIV. P. 12(h)(1); *see also Gilmore*, 843 F.3d at 964. It is undisputed that the Palestinian Defendants complied with that initial obligation by raising their personal jurisdiction defense in their pre-answer, pre-default motion to dismiss.

The question is whether the Palestinian Defendants' conduct after the entry of default amounted to forfeiture. It did not.

To be sure, properly raising an objection to personal jurisdiction at the outset of the case did not immunize the Palestinian Defendants against later forfeiting that objection by their conduct. That is because objections to personal

jurisdiction "can be waived at any stage of a proceeding." *Spann*, 899 F.2d at 32–33. But simply pleading the absence of personal jurisdiction is not all that happened here. The Palestinian Defendants also raised personal jurisdiction in a motion to dismiss at the outset of the case and litigated it fully before the district court, which considered and rejected the personal jurisdiction challenge. And when the Palestinian Defendants asked for a written explanation of the ruling, the court denied that too. At that point, nothing in the law required the Palestinian Defendants to continue beating a dead horse. Instead, they could turn to "defend[ing] on the merits in the district court without losing [their] right to press on direct review the jurisdictional objection, along with objections on the merits." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1547 (D.C. Cir. 1987).

In other words, once the issue is litigated to resolution in the district court, a defendant's pivot to defending on the merits by itself is an insufficient basis for inferring abandonment of a personal jurisdiction challenge. Instead, the district court would need to predicate a finding of forfeiture on specific actions later taken by the defendant that are inconsistent with the good-faith preservation of the defense, such as intentional sandbagging or an express and unambiguous renunciation of the claim. *See Peterson*, 140 F.3d at 1317–1319; *Brownlow v. Aman*, 740 F.2d 1476, 1483 n.1 (10th Cir. 1984) (holding that moving to dismiss for lack of personal jurisdiction preserves the issue for appeal).

In finding forfeiture, the district court trained its analysis on the Palestinian Defendants' post-default litigation. The court emphasized, in particular, the Palestinian Defendants' representation in seeking vacatur of the default that they were now committed to litigating the case on the merits. J.A. 301 ("[T]hese defendants, in asking the Court to vacate their

intentional default, informed this Court of their 'seriousness' and the 'good faith' with which they intended to litigate their 'strong meritorious defenses.'") (quoting Memorandum in Support of Palestinian Defendants' Motion to Vacate Clerk's Entry of Default, *supra*, at 5, J.A. 176; and quoting *id.* at 40, J.A. 211). Against that backdrop, the district court reasoned that defendants who "have participated in litigation for a lengthy period of time and have sought affirmative relief from the [c]ourt" have, in so doing, "manifested their consent to the [c]ourt's jurisdiction through their conduct," and have forfeited their personal jurisdiction defense. J.A. 301.

Applying that rule, the district court concluded that even though the Palestinian Defendants included personal jurisdiction as an affirmative defense in their answer, they abandoned that objection and consented to the court's jurisdiction by first seeking vacatur of the default with a promise to defend on the merits, and then moving for summary judgment "without including a challenge to personal jurisdiction" in the motion. J.A. 301.

The district court was correct that a defendant cannot preserve a personal jurisdiction defense by just raising it in an answer, proceeding to engage in substantial litigation on the merits without teeing up the personal jurisdiction issue in a motion, and then resurrecting the defense only after the case takes an unfavorable turn on the merits. It would, after all, be "perverse" to allow defendants to "ask[] the court to proceed on the merits, and then, only if the court's decision is unfavorable, seek[] to re-assert jurisdictional defenses." *Boulger v. Woods*, 917 F.3d 471, 477–478 (6th Cir. 2019).

But what happened procedurally in this case is materially different. The Palestinian Defendants did more than just flag personal jurisdiction as a defense in their answer. They

properly filed a motion to dismiss on that basis, fully litigated it, and lost before the district court. The Palestinian Defendants then followed up with a request that the district court explain the basis for its minute-order rejection of their personal jurisdiction defense. Once the district court declined, the Palestinian Defendants got the clear message that the court was finished adjudicating that issue.

It was in that specific context that the Palestinian Defendants shifted at the default stage and "committed to litigating the case on the merits," "rather than continuing to rely *exclusively* on jurisdictional defenses." J.A. 182–183 (emphasis added; formatting modified). Hewing to our decision in *Practical Concepts*, the Palestinian Defendants chose not to stand on their jurisdictional objection alone and default, but instead to defend on the merits, preserving the already-decided jurisdictional issue for appeal, *see* 811 F.2d at 1547.

Even still, the Palestinian Defendants took additional steps to alert the district court and the Families that they maintained their personal jurisdiction objection. The Palestinian Defendants included personal jurisdiction as an affirmative defense in their answer, which was filed along with the motion to vacate the default. Answer at 2, *Shatsky*, No. 1:02-cv-02280-RJL (D.D.C. Dec. 21, 2007), ECF No. 77-10. And the motion to vacate advised that, while now focused on addressing the merits, the Palestinian Defendants were not "waiving any of the defenses raised in the verified answer." J.A. 205. In other words, the Palestinian Defendants embraced the agree-to-disagree approach authorized by *Practical Concepts*.

Underscoring their efforts to preserve their personal jurisdiction defense, once the Supreme Court's decision in *Daimler* armed them with favorable intervening authority, the

Palestinian Defendants renewed their personal jurisdiction argument. When they did not prevail in that round, they moved for reconsideration or authorization of an interlocutory appeal under 28 U.S.C. § 1292(b).

True, the Palestinian Defendants did not raise personal jurisdiction in their summary judgment motion. It would have been better and fairer to the district court and the Families if they had. But the Palestinian Defendants did request reconsideration of the personal jurisdiction ruling in their supplemental summary judgment briefing after a favorable Second Circuit decision issued, and they had earlier renewed their objection following the Supreme Court's decision in *Daimler*.

That pattern documents that the Palestinian Defendants took sufficient steps to preserve their personal jurisdiction defense. While changing their focus to the merits out of respect for the apparent definitiveness of the district court's adverse ruling, they preserved the argument in their answer and twice revived the argument when new authority might have justified revisiting an otherwise settled question.[4]

The district court read our decision in *Democratic Republic of Congo v. FG Hemisphere Associates, LLC*, 508

---

[4] *See Aly v. Hanzada for Import & Export Co.*, 864 F.3d 844, 847–848 (8th Cir. 2017) (after losing motion to dismiss, defendant preserved personal jurisdiction objection by raising it in its answer, even though it was omitted from the defendant's summary judgment motion); *Peterson*, 140 F.3d at 1317–1319 (defendants did not forfeit their personal jurisdiction defense by failing to raise it in a summary judgment motion, at the close of the plaintiffs' case at trial, or in a post-trial motion because the defendants had already moved to dismiss for lack of personal jurisdiction, lost that motion, and filed an answer preserving the defense).

F.3d 1062 (D.C. Cir. 2007), as holding that personal jurisdiction is forfeited "where a defendant has engaged in extensive post-default litigation without suggesting an infirmity in personal jurisdiction[.]" J.A. 300 (quoting *Democratic Republic of Congo*, 508 F.3d at 1064). That is true. But that case involved a defendant's failure to raise a personal jurisdiction objection *at all* until late in the litigation. As we explained, "defendants should *raise* [personal jurisdiction] *before* the court's and parties' time is consumed in struggle over the substance of the suit[.]" *Id.* (emphasis added).

In so holding, *Democratic Republic of Congo* simply joined a long line of precedent holding that defendants cannot raise personal jurisdiction for the very first time after the litigation is well underway. *See Manchester Knitted Fashions, Inc. v. Amalgamated Cotton Garment & Allied Indus. Fund*, 967 F.2d 688, 691–692 (1st Cir. 1992) (defendant litigated a temporary restraining order for about three months before contesting venue for the first time in its answer); *Trustees of Central Laborers' Welfare Fund v. Lowery*, 924 F.2d 731, 732 (7th Cir. 1991) (defendants first raised defective service after six years of post-default judgment proceedings); *Marcial Ucin, S.A. v. SS Galicia*, 723 F.2d 994, 997 (1st Cir. 1983) (defendant appeared, attended thirteen depositions, and then raised its personal jurisdiction defense for the first time in a motion to dismiss filed four years after its appearance).

At bottom, the district court misstepped when it analyzed forfeiture starting at the middle rather than the beginning of the litigation. That led it to apply the wrong legal standard—one that applies to defendants who do not raise personal jurisdiction at all until after extensive litigation. Here, the Palestinian Defendants' full litigation of the issue at the outset of the case, preservation of the defense in their answer, and efforts twice to

seek post-default reconsideration of the district court's adverse ruling sufficed to preserve the claim.

**2**

The Families' three arguments in support of forfeiture fail.

*First*, the Families argue that the Palestinian Defendants' personal jurisdiction defense was forfeited because the way they litigated after the default gave the Families "a reasonable expectation that [they would] defend the suit on the merits," and they "cause[d] the court to go to some effort that would be wasted if personal jurisdiction is subsequently found lacking." Families' Reply Br. 5 (quoting *Hedeen Int'l, LLC v. Zing Toys, Inc.*, 811 F.3d 904, 906 (7th Cir. 2016)).

That argument repeats the district court's error: Courts that apply the Families' test or a similar one do so to determine whether a defendant waited too long to press "the issue by motion[,]" as opposed to merely pleading it as an affirmative defense and otherwise standing silent. *See King v. Taylor*, 694 F.3d 650, 660–661 (6th Cir. 2012) (internal quotation marks omitted) (defendant forfeited his service defense by including it in his answer, participating in the litigation for more than a year, and only then raising it at the summary judgment stage); *see also Boulger*, 917 F.3d at 477 (applying the "reasonable expectation" test where the defendant had pleaded personal jurisdiction as an affirmative defense but had not raised it in a motion); *Hedeen*, 811 F.3d at 906 (addressing the timeliness of an initial challenge to personal jurisdiction).[5]

---

[5] *See also H-D Michigan, LLC v. Hellenic Duty Free Shops S.A.*, 694 F.3d 827, 848 (7th Cir. 2012) ("[A] party may appear and litigate both a personal jurisdiction defense and the merits of a case without waiving the personal jurisdiction defense[.]"); *Hamilton v. Atlas*

*Second*, the Families argue for a categorical rule under which a defendant forfeits its personal jurisdiction defense whenever it "files a dispositive motion on the merits without mentioning its jurisdictional defense." Families' Reply Br. 6. But none of the cases the Families cite for that rule involved defendants who had already litigated and lost the personal jurisdiction issue. *See Boulger*, 917 F.3d at 477 (no earlier motion raising jurisdictional defense); *CalMat Co. v. Oldcastle Precast, Inc.*, No. 16-26 KG/WPL, 2016 WL 9776555, at *2–3 (D.N.M. Oct. 5, 2016) (same); *Casares v. Agri-Placements Int'l, Inc.*, 12 F. Supp. 3d 956, 966 (S.D. Tex. 2014) (same). We have found no such case either. Nor do the Families explain why such a rigid rule of perpetual relitigation should be imposed even after a personal jurisdiction defense has been fully litigated and rejected in district court.

*Third*, relying on *Bouchet v. National Urban League, Inc.*, 730 F.2d 799 (D.C. Cir. 1984), the Families contend that the Palestinian Defendants were required to renew their motion to dismiss after the district court vacated the default because the "motion was denied by minute order, which did not create 'law of the case,'" Families' Reply Br. 10. *Bouchet* actually proves the opposite. That case held that a minute order created law of the case on the issue it "necessarily decided," but not on a "new issue" that arose later. *Id.* at 806. So the problem was not that minute orders are unable to create law of the case, but that the law-of-the-case doctrine is triggered only when an issue is "expressly addressed" or "must have been decided by

_____

*Turner, Inc.*, 197 F.3d 58, 62–63 (2d Cir. 1999) (finding forfeiture where the defendant pleaded the defense, but then participated in pretrial proceedings for four years without moving to dismiss for lack of personal jurisdiction); *Continental Bank, N.A. v. Meyer*, 10 F.3d 1293, 1296–1297 (7th Cir. 1993) (similar).

necessary implication[.]" *Id.* (internal quotation marks omitted).[6]

Anyhow, it would make little sense to evaluate a defendant's diligence in advancing its personal jurisdiction defense based on whether the district court explains itself. After all, "*any* order or other decision, *however designated*," that does not resolve all claims against all parties and that the district court does not make final under Rule 54(b) "may be revised at any time before the entry of a [final] judgment[.]" FED. R. CIV. P. 54(b) (emphasis added). So a minute order is open to reconsideration on the same terms as a lengthy opinion reaching the same result.

For all of those reasons, we hold that the Palestinian Defendants properly preserved their objection to the court's exercise of personal jurisdiction for appellate review, and the district court abused its discretion in holding otherwise.[7]

## C

The easiest part of this case is the actual merits of the Palestinian Defendants' objection to personal jurisdiction. We review *de novo* "the district court's assertion of personal jurisdiction[.]" *In re Sealed Case*, 932 F.3d 915, 922 (D.C. Cir. 2019) (internal quotation marks omitted). And as the Families

---

[6] Although minute orders bind the parties and can create law of the case, their weight on appeal is necessarily diminished because we are deprived of any insight as to *why* the district court ruled as it did.

[7] This case does not present, and so we do not decide, the question whether a district court's entry of a default judgment, *see* FED. R. CIV. P. 55(b)—as opposed to the Clerk's entry of default as occurred here, *see* FED. R. CIV. P. 55(a)—would require more vigorous efforts on the part of a defendant to preserve a personal jurisdiction argument.

admit, binding circuit precedent answers the question in the Palestinian Defendants' favor.

There are two forms of personal jurisdiction: "general or all-purpose jurisdiction, and specific or conduct-linked jurisdiction." *Klieman*, 923 F.3d at 1119 (quoting *Daimler*, 571 U.S. at 122). "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the forum are so continuous and systematic as to render them essentially at home in the forum." *Id.* at 1120 (quoting *Daimler*, 571 U.S. at 127) (formatting modified). "[A]bsent exceptional circumstances," that means "general jurisdiction will lie only where an entity is formally incorporated or maintains its principal place of business." *Id.*

Specific jurisdiction, by contrast, requires "a relationship among 'the defendant, the forum, and the litigation.'" *Klieman*, 923 F.3d at 1120 (quoting *Walden v. Fiore*, 571 U.S. 277, 291 (2014)). Put another way, "the defendant's suit-related conduct must create a substantial connection with the forum." *Id.* (emphasis omitted) (quoting *Walden*, 571 U.S. at 284).

**1**

The Palestinian Authority and the PLO are not subject to general jurisdiction because neither one is "at home" in the District of Columbia within the meaning of *Daimler*. *See* 571 U.S. at 139. *Livnat* was explicit that, because the Palestinian Authority's "headquarters, officials, and primary activities are all in the West Bank," it is "not subject to general jurisdiction in the United States." 851 F.3d at 56. In *Klieman*, we reaffirmed that holding as to the Palestinian Authority and extended it to the PLO. 923 F.3d at 1123.

*Klieman* also forecloses any argument that either the Palestinian Authority or the PLO could be deemed to have consented to jurisdiction, within the meaning of the Anti-Terrorism Clarification Act of 2018.[8]  The Anti-Terrorism Clarification Act treated "certain conduct" by defendants as consent to general personal jurisdiction, *Klieman*, 923 F.3d at 1127, such as receiving certain forms of foreign aid, or establishing or maintaining an "office, headquarters, premises, or other facilities or establishments within the jurisdiction of the United States" while "benefiting from a waiver or suspension" of the Anti-Terrorism Act's prohibitions regarding the PLO.  18 U.S.C. § 2334(e)(1) (2018) (citing 22 U.S.C. § 5202).

*Klieman* held that neither the Palestinian Authority nor the PLO satisfied any of the Anti-Terrorism Clarification Act's factual predicates for consent to jurisdiction.  *See* 923 F.3d at 1128–1130.  Because the Families concede that *Klieman* controls and have not come forth with any evidence that the facts pertaining to consent have changed in the interim, the Anti-Terrorism Clarification Act does not provide a basis for exercising general personal jurisdiction over either the Palestinian Authority or the PLO.

**2**

Binding circuit precedent likewise forecloses the exercise of specific personal jurisdiction over the Palestinian Authority and the PLO.  The Families argued in district court that specific jurisdiction existed because (i) the Palestinian Authority and the PLO provided material support for terrorism as part of a

---

[8] Pub. L. No. 115-253, § 4(a), 132 Stat. 3183, 3184 (codified at 18 U.S.C. § 2334(e)), *repealed by* Promoting Security and Justice for Victims of Terrorism Act of 2019, H.R. 1865, 116th Cong., div. J, § 903 (enacted Dec. 20, 2019).

public relations campaign designed to influence the United States' policy toward Israel, and (ii) it was foreseeable that the bombing would injure United States citizens because it took place in a neighborhood that visitors and emigrants from the United States were known to frequent.

*Livnat* rejected that same public-relations theory because the plaintiffs there "failed to link th[e] particular attack to the alleged plan to influence opinion and policy in the United States." 851 F.3d at 56–57; *see Klieman*, 923 F.3d at 1124 ("*Livnat*'s logic governs here."). The link missing in those cases is absent here too. The Families do not identify any evidence in the record connecting the Karnei Shomron bombing to the alleged public relations campaign.

*Klieman* similarly puts the kibosh on the jurisdictional theory that the area was frequented by Americans. *Klieman* ruled that evidence of "intentional targeting" of Americans or some other form of "intentional conduct by the defendant" is needed to "create[] the necessary contacts with the forum." *Id.* at 1126 (quoting *Walden*, 571 U.S. at 286). The Families have come forward with no such evidence.

**3**

*Livnat* and *Klieman* would have been the end of the personal jurisdiction story in this case but for an intervening Act of Congress. Three months after oral argument, Congress enacted the Promoting Security and Justice for Victims of Terrorism Act of 2019, H.R. 1865, 116th Cong., div. J, § 903 (enacted Dec. 20, 2019) ("Justice for Victims Act").

As relevant here, the Justice for Victims Act provides that the Palestinian Authority and the PLO specifically "shall be deemed to have consented to personal jurisdiction" in any Anti-Terrorism Act suit if they make certain types of payments to

terrorists or their families "directly or indirectly" after April 18, 2020. H.R. 1865, 116th Cong., div. J, § 903(c)(1)(A) (to be codified at 18 U.S.C. § 2334(e)).

The Justice for Victims Act applies retroactively to "any case pending on or after August 30, 2016," H.R. 1865, § 903(d)(2), "regardless of the date of the occurrence of the act of international terrorism" at issue, *id.* § 903(c)(1)(A) (to be codified at 18 U.S.C. § 2334(e)(1)).

The Families argue that, after April 18, 2020, the Palestinian Defendants might make the types of payments covered by the Justice for Victims Act and, in so doing, trigger retroactive consent to personal jurisdiction. On that basis, they request that this court remand the case to the district court to address the implications of this new statute in the first instance.

The Palestinian Defendants dismiss that suggestion as speculative because they might never make covered payments.

The Palestinian Defendants are correct. Perhaps the Justice for Victims Act will at some point create personal jurisdiction over the Palestinian Authority or the PLO. But neither one of them can possibly have made any statutorily relevant payments before the jurisdictional trigger even takes effect. The mere prospect that they *might* do so in the future does not create personal jurisdiction now. *Cf. Timbisha Shoshone Tribe v. Salazar*, 678 F.3d 935, 937–939 (D.C. Cir. 2012) (ordering dismissal for lack of jurisdiction because the plaintiffs lacked standing to sue on behalf of their Tribe, despite pending litigation that might lead to their recognition as the Tribe's leadership).

Because the Palestinian Defendants are not now and were not at the time they were served subject to the district court's personal jurisdiction, this case must be dismissed without

prejudice. *See Caribbean Broad. Sys., Ltd. v. Cable & Wireless P.L.C.*, 148 F.3d 1080, 1091 (D.C. Cir. 1998) (dismissals for lack of personal jurisdiction are without prejudice). That dismissal without prejudice would, of course, leave the Families free to refile if new facts establish personal jurisdiction before the statute of limitations runs. *See Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983) (dismissals for lack of jurisdiction are not preclusive where the "jurisdictional deficiency [is] remedied by occurrences subsequent to the original dismissal") (emphasis omitted).

## IV

In sum, the Palestinian Defendants did not forfeit their personal jurisdiction defense, and the district court abused its discretion in concluding otherwise. Because the district court lacked personal jurisdiction over the defendants, its judgment on the merits cannot stand. We therefore vacate the district court's judgment and remand with instructions to dismiss the case without prejudice for lack of jurisdiction.

*So ordered.*